### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KATHY MURPHY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. |
| GREYSTAR MANAGEMENT SERVICES, L.P. ) | |
| <u>Serve Registered Agent</u>: ) | **JURY TRIAL DEMANDED** |
| 112 SW 7th Street, Suite 3C ) | |
| Topeka, KS 66603 ) | |
| ) | |
| ) | |
| Defendant. ) | |

### **COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiff Kathy Murphy, by and through the undersigned counsel, and states and alleges as follows for her Complaint against Defendant Greystar Management Services, L.P. (hereinafter, "Greystar.")

### **INTRODUCTION**

1. In violation of the Americans with Disabilities Act ("ADA"), Plaintiff, while an employee of Defendant Greystar, was subjected to unlawful discrimination based on her status as an individual with a disability/perceived disability.

2. In further violation of the Americans with Disabilities Act ("ADA"), Defendant subjected Plaintiff to unlawful retaliation, including but not limited to the wrongful termination of her employment, in response to Plaintiff's protected activity of requesting a reasonable accommodation due to her disability and/or because Plaintiff filed a Charge of Discrimination alleging disability discrimination on or about September 12, 2018.

3. Finally, Plaintiff alleges she was wrongfully terminated in violation of Kansas public policy because she availed herself of her rights pursuant to the Kansas Workers'

Compensation statute as set forth in KSA §44-501 *et seq.*, and seeks all remedies available pursuant to Kansas law.

4. Plaintiff seeks compensatory and punitive damages against Defendant.

## PARTIES

5. Plaintiff Kathy Murphy is and was at all times relevant to the allegations contained herein, a Missouri resident.

6. Defendant Greystar is a foreign limited partnership, authorized to conduct business in the State of Kansas, including at a location in Overland Park, Kansas, where Plaintiff was employed.

7. Defendant Greystar employs more than fifteen (15) persons within the State of Kansas and was at all relevant times herein an "employer" within the meaning of the Americans with Disabilities Act ("ADA.")

8. Defendant Greystar is an entity, and thus incapable of acting on its own behalf and therefore acts through agents. It is liable for the conduct of its agents, including but not limited to the individuals named herein, acting within the course and scope of their agency, its own negligence, the acts of its agents which it ratifies, injuries incurred by agents' performance of its non-delegable duties, and acts its agents take by virtue of their agency or employment with Defendant.

9. At all times mentioned herein, each of Defendant's employees referenced in this Complaint were the agents, servants, and employees of Defendant who were all acting within the course and scope of their employment with Defendant.

2

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 as the matter involves a question of federal law.

11. The Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

12. Jurisdiction is proper over Defendant, as it transacted business in the State of Kansas and the acts or omissions alleged herein occurred in the State of Kansas.

13. Venue is proper in this Court as the alleged acts, omissions, and occurrences giving rise to the claims asserted occurred in Johnson County, Kansas, which is within the jurisdiction of the District of Kansas.

## CONDITION PRECEDENT

14. Plaintiff filed a timely Charge of Discrimination with the Equal Opportunity Commission ("EEOC") on or about September 12, 2018 alleging disability discrimination during her employment with Defendant.

15. In response, the EEOC generated Charge Number 563-2018-02995. *A copy of the charge is attached hereto as **Exhibit A** and incorporated herein by reference.*

16. On or about September 19, 2018, Plaintiff filed a second Charge of Discrimination against Defendant alleging retaliation.

17. In response, the EEOC also assigned this second Charge Number 563-2018-02995. *A true and accurate copy of the charge is attached hereto as **Exhibit B** and incorporated herein by reference.*

18. Upon information and belief, the EEOC received a duplicate copy of the aforementioned Charge No. 573-2018-02995 alleging retaliation (***Exhibit B***) and file-stamped the

duplicate copy on September 24, 2018, assigning it Charge No. 563-2019-00589.[1] *A true and accurate copy of the charge is attached hereto as **Exhibit C** and incorporated herein by reference.*

19. On or about March 28, 2019, Plaintiff received her Notice of Right to Sue associated with Charge No. 563-2018-02995 issued by the EEOC permitting her to assert the federal claims alleged herein. *A true and accurate copy of the Notice of Right to Sue is attached hereto as **Exhibit D** and incorporated herein by reference.*

20. On or about March 28, 2019, Plaintiff received a second Notice of Right to Sue associated with Charge No. 563-2019-00589 from the EEOC permitting her to assert the federal claims alleged herein. *A true and accurate copy of the Notice of Right to Sue is attached hereto as **Exhibit E** and incorporated herein by reference.*

21. The Charges of Discrimination filed by Plaintiff (No. 563-2019-00589 and No. 563-2018-02995) specifically name "Greystar Real Estate Partners" and list the address for Defendant's headquarters in Charleston, South Carolina.

22. Upon information and belief, "Greystar Real Estate Partners" and Defendant "Greystar Management Services L.P." are entities owned and operated by Greystar Worldwide, LLC.

23. Defendant Greystar Management Services L.P. is the entity listed on Plaintiff's IRS Form W-2.

---

[1] Charge Nos. 563-2019-00589 (*Exhibit C*) and 563-2018-02995 (*Exhibit B*) are identical. Upon information and belief, the EEOC also received a duplicate copy of Charge No. 563-2018-02995 (attached hereto as *Exhibit A* and filed on or about September 12, 2018 alleging disability discrimination), file-stamped the duplicate copy on September 17, 2018, and also assigned that Charge No. 563-2018-02995 (a true and accurate copy is attached hereto as *Exhibit F* and incorporated by reference). Nonetheless, the EEOC issued a Notice of Right to Sue for all four Charges of Discrimination, and Plaintiff has met her administrative prerequisites as to all claims in this case arising under federal law.

24. After a reasonable period for discovery, there will likely be evidentiary support to show that Defendant Greystar Management Services L.P. had actual knowledge that Plaintiff filed her initial charge of discrimination on or about September 12, 2018, and therefore had actual knowledge that Plaintiff was alleging that Defendant Greystar had engaged in unlawful discrimination on the basis of Plaintiff's disability/perceived disability. (*See, **Exhibit A**, which is attached hereto and incorporated by reference.*)

25. After a reasonable period for discovery, there will likely be evidentiary support to show that Defendant Greystar Management Services L.P. had actual knowledge that Plaintiff filed an second Charge of Discrimination on or about September 18, 2018, and therefore had actual knowledge that Plaintiff was alleging that Defendant Greystar had engaged in unlawful retaliation. (*See, **Exhibit B**, which is attached hereto and incorporated by reference.*)

26. Defendant Greystar was provided with the opportunity to conciliate through the EEOC.

27. The interests of Defendant Greystar Management Services L.P and "Greystar Real Estate Partners" were so similar with respect to Plaintiff's claims of discrimination and retaliation that their conduct was one in the same, making in unnecessary to specifically name "Greystar Management Services L.P." in addition to "Greystar Real Estate Partners" in the EEOC charges.

28. Upon information and belief, Kari Fecht serves as "Director of Employee Relations" for both Greystar Real Estate Partners and Defendant Greystar Management Services, L.P.

29. Kari Fecht received actual notice of the Notices of Right to Sue associated with the EEOC charges filed by Plaintiff. (*See, **Exhibit C** and **Exhibit D**, which are attached hereto and incorporated by reference.*)

30. Upon information and belief, Fecht received actual notice of the Charges of Discrimination filed by Plaintiff alleging discrimination and retaliation.

31. Defendant "Greystar Management Services L.P." has suffered no prejudice by not being specifically named in the EEOC charges filed by Plaintiff.

32. This action is timely filed within ninety (90) days of the issuance of the Notices of Right to Sue (attached as *Exhibit C* and *Exhibit D*).

33. Plaintiff has met all conditions precedent to filing this action.

## **FACTUAL ALLEGATIONS**

34. Defendant Greystar owns, operates, and manages rental housing properties in the State of Kansas and throughout the United States.

35. According to its website, Defendant Greystar identifies itself as "the global leader in rental housing."[2]

36. Plaintiff is and was at all times relevant herein an employee of Defendant Greystar.

37. In approximately June of 2017, Plaintiff began her employment with Defendant as a Property Manager.

38. Plaintiff worked at Defendant's office located in Overland Park, Kansas.

39. In approximately July of 2017, just one month after the start of Plaintiff's employment, she was injured at work in the course and scope of her job duties.

40. Specifically, a metal pole fell on Plaintiff's head in the workplace, causing a severe concussion and lasting neurological damage.

---

[2] *See*, https://www.greystar.com/browse-apartments/us/ks/kansas-city-metro (last visited June 24, 2019).

41. Plaintiff sought and received treatment for her head injury through Defendant's workers' compensation providers, including Midwest Sports Medicine Physicians.

42. As a result of the neurological damage, Plaintiff took a medical leave of absence from Defendant on or about July 14, 2017 and underwent medical treatment, including speech therapy, for approximately one (1) year.

43. Plaintiff's neurological injuries constitute a "disability," as Plaintiff's condition is a physical or mental impairment that substantially limits one or more of Plaintiff's major life activities and/or Defendant perceives or regards Plaintiff's condition as a "disability," as that term is defined in the Americans with Disabilities Act ("ADA.")

44. More specifically, Plaintiff experiences memory loss and has difficulty articulating her thoughts as a result of the neurological damage from the workplace injury.

45. Nonetheless, Plaintiff is currently and was, at all times relevant to the allegations herein, capable of performing her job duties as Property Manager with or without reasonable accommodation.

46. Throughout her medical leave of absence, Plaintiff received continued treatment through Defendant's workers' compensation provider, Dr. Dyke, at Midwest Sports Medicine Physicians.

47. Throughout her medical leave of absence, Plaintiff provided Defendant's Human Resources Department with updated work status notes from Dr. Dyke.

48. Plaintiff also received medical treatment during this time period from neurologist Dr. John Sand, who placed Plaintiff on work restrictions separate from those provided by Dr. Dyke.

49. On or about June 15, 2018, Dr. Dyke released Plaintiff to return to work on a part-time basis for the time period of June 15, 2018 through July 13, 2018.

50. Plaintiff was placed on light-duty work restrictions that required no lifting over ten (10) pounds, limited Plaintiff to working two-hour shifts two days per week, and taking break every thirty (30) minutes to control her symptoms.

51. Plaintiff provided a copy of these light duty work restrictions to Defendant's Human Resources Administrator, Carolyn Peace, via e-mail on or about June 18, 2018.

52. On or about June 18, 2018, Plaintiff e-mailed Defendant's Regional Property Manager Kaci Brown and inquired whether Defendant had any property manager positions opening soon.

53. On or about June 19, 2018, Brown responded that a property manager position was open for Defendant's Commerce Tower property and Plaintiff was "welcome to apply."

54. On or about June 19, 2018, Dr. Dyke released Plaintiff to return to work on light duty from June 19, 2018 through July 20, 2018 with fewer light duty restrictions.

55. Plaintiff's new restrictions included working a maximum of four-hour shifts three days per week, and to take a ten-minute break every hour.

56. On or about July 6, 2018, Plaintiff attempted to apply for the open property manager position at Commerce Tower through her employee portal.

57. However, Plaintiff noticed that her employee log-in credentials had been deactivated.

58. On the evening of July 6, 2018, Plaintiff notified HR Administrator Carolyn Peace about the issue with her employee log-in credentials.

59. Over the next few weeks, Plaintiff also contacted Kaci Brown, Director of Employee Relations Kari Fecht, Claims Associate David Carpenter, and Defendant's IT

Department in an attempt to correct the issue so that she could formally apply for open job positions through Defendant's employee portal.

60. Still, Plaintiff was not provided access to the job application portal.

61. On or about July 11, 2018, Plaintiff e-mailed Peace reiterating the fact that she was able to return to work at any time with her light duty restrictions from Dr. Dyke.

62. Upon information and belief, Defendant had light duty work falling within Plaintiff's work restrictions available.

63. Plaintiff also stated in the July 11, 2018 e-mail to Peace, "At this point it is clear that Greystar as no intention on returning me to work because of my work comp claim."

64. Also, in July of 2018, after Plaintiff raised these concerns to Peace via e-mail on July 11, 2018, Defendant terminated Plaintiff's workers' compensation benefits.

65. Defendant only reinstated Plaintiff's workers' compensation benefits after it was court-ordered to do so.

66. On or about July 18, 2018, Plaintiff was released to full duty work with no "neurological" restrictions by her neurologist, Dr. John Sand.

67. On or about July 19, 2018, Plaintiff provided her full duty neurological work release from Dr. Sand to Peace.

68. As of July 31, 2018, Plaintiff still was not provided with employee log-in credentials to access Defendant's job application portal.

69. Also, on or about July 31, 2018, Brown informed Plaintiff that the property manager at Commerce Tower was offered to someone else.

70. Plaintiff expressed her concern that Defendant prolonged the process of providing Plaintiff with her employee log-in credentials so that Defendant could fill the position with another candidate.

71. Plaintiff told Brown she would continue to apply for another position.

72. On or about August 6, 2018, Plaintiff was finally provided with access to her employee log-in credentials.

73. On or about August 7, 2018, Plaintiff saw that the property manager position at Commerce Tower was still posted on the job portal, despite Brown's earlier representation that the position had been offered to someone else.

74. On or about August 16, 2018, Plaintiff provided Brown, Fecht, and Peace with an updated work restriction status from Dr. Dyke, which allowed her to continue working part-time, and asked whether Defendant had work to accommodate her restrictions.

75. When Fecht responded that there was no such work available, Plaintiff inquired about Defendant's ability to provide her work in other areas or positions until Plaintiff's restrictions were lifted.

76. Upon information and belief, Defendant did, in fact, have available positions for which Plaintiff was qualified and which fell within her part-time work restrictions from Dr. Dyke.

77. Defendant failed to engage in an interactive process with Plaintiff to determine whether Plaintiff could perform the essential functions of her job with or without reasonable accommodation. Instead, Defendant simply concluded it could not accommodate her work restriction from Dr. Dyke.

78. On or about September 12, 2018, Plaintiff filed a Charge of Discrimination alleging disability discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC").

79. On or about September 14, 2018, Plaintiff received a letter from Employee Relations Director Kari Fecht terminating Plaintiff's employment "[d]ue to not having a Community Manager or like vacant position at this time."

80. Upon information and belief, Defendant was aware that Plaintiff filed her Charge of Discrimination with the EEOC prior to terminating her employment.

81. Plaintiff's disability/perceived disability does not prevent Plaintiff from performing the duties and responsibilities of her position, yet Defendant refused to allow Plaintiff to return to work.

82. During the time period of June 15, 2018 through Plaintiff's wrongful termination on or about September 14, 2018, Defendant wholly failed to work interactively with Plaintiff to identify a plan for Plaintiff to return to work and perform the essential functions of her position with or without reasonable accommodation.

83. Instead, Defendant discriminated against Plaintiff based on her disability/perceived disability, failed to engage in the interactive process as it relates to Plaintiff's return to work, and otherwise failed to accommodate Plaintiff.

84. Moreover, Defendant retaliated against Plaintiff in response to requests for reasonable accommodations within her light duty work restrictions and because Plaintiff filed a Charge of Discrimination with the EEOC.

85. As a result of Defendant's discriminatory conduct, acts and omissions, Plaintiff has incurred lost wages and emotional distress, including stress, anxiety, humiliation and degradation.

86. The conduct set forth herein constitutes violations of the Americans with Disabilities Act.

87. At all times mentioned herein, the above referenced perpetrators, were agents, employees and servants of Defendant and were at all such times acting in within the course and scope of their employment, and/or their actions were expressly authorized by Defendant, thus making Defendant liable under the doctrine of *respondeat superior*.

## COUNT I
## ADA – Disability Discrimination

88. Plaintiff incorporates herein by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

89. The ADA/ADAA prohibits discrimination against a person who has or is regarded as having a physical impairment that substantially limits one of more of her major life activities.

90. Plaintiff's neurological injuries constitute a "disability" as that term is defined in the ADA/ADAA and/or Defendant perceived Plaintiff as having a physical impairment that constitutes a "disability" as that term is defined in the ADA/ADAA.

91. The conduct and actions by the above-described perpetrators were performed on the basis of Plaintiff's disability/perceived disability and constitute discrimination based on disability.

92. By failing and refusing to engage in the interactive process and/or refusing to accommodate Plaintiff with respect to her disability; and/or refusing to allow Plaintiff to return to work when she was released for duty, Defendant engaged in conduct that is prohibited by the Americans with Disabilities Act. 42 U.S.C.§ 12101 *et. seq.*

93. Plaintiff suffered tangible adverse employment actions as a result of Defendant's conduct as referenced herein.

94. Defendant's conduct caused Plaintiff emotional distress, including embarrassment, stress, anxiety and depression.

95. The conduct of Defendant described herein would have detrimentally affected a reasonable person in Plaintiff's position.

96. Defendant's treatment of Plaintiff was punitive in nature and was based upon Plaintiff's status as a person who has or is regarded as having a physical impairment that substantially limits one or more major life activities.

97. Supervisory and administrative-level employees, including but not limited to Kari Fecht, Carolyn Peace, David Carpenter, and Kaci Brown, knew or should have known of the discrimination but that failed to appropriately address the problem and further failed to implement effective and appropriate procedures to stop the discrimination.

98. The actions and conduct set forth herein were outrageous and showed evil motive, reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter it and others from similar conduct.

99. At all times mentioned herein, the above-referenced perpetrators, including Kari Fecht, Carolyn Peace, David Carpenter, and Kaci Brown, were employees, agents and servants of Defendant and were at all such times acting within the course and scope of their employment with Defendant and/or their actions were expressly authorized by Defendant, making Defendant liable under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count I of the Complaint, for a finding she has been subjected to unlawful discrimination as prohibited by 42 U.S.C. §12101 *et. seq.*, for an award of compensatory and punitive damages, pre-judgment and post-judgment interest as provided by law, for her costs expended, reasonable attorneys' fees, and for such other and further relief as this Court deems just and proper, including equitable relief.

## COUNT II
## ADA – Retaliation

100. Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

101. Plaintiff engaged in protected activity which includes, but is not limited to requesting a reasonable accommodation due to her disability and/or perceived disability and/or participating in an EEOC proceeding by filing a Charge of Discrimination alleging disability discrimination on or about September 12, 2018.

102. As a result of Plaintiff's protected activities, Defendant subjected Plaintiff to adverse employment actions as alleged herein, including but not limited to refusing to allow Plaintiff to return to work, terminating her workers' compensation benefits, and ultimately, terminating her employment.

103. Defendant's retaliation against Plaintiff was intentional, willful, and malicious, and constituted a willful violation of Plaintiff's federally protected rights.

104. At the time Defendant retaliated against Plaintiff, Defendant knew that such retaliation was unlawful.

105. Defendant's unlawful conduct directly and proximately caused and will continue to cause Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

106. Defendant's actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE Plaintiff prays for judgment in her favor and against Defendant on Count II of the Complaint for a finding that she has been subjected to unlawful retaliation as prohibited by the Americans with Disabilities Act; for an award of compensatory and punitive damages; pre judgment and post judgment interest as provided by law; for his costs expended herein; reasonable attorneys' fees; and for such other and further relief as this Court deems just and proper.

## COUNT III
### Wrongful Termination in Violation of Public Policy

107. Plaintiff incorporates herein by reference the above allegations and paragraphs as though fully set forth herein.

108. Plaintiff availed herself of workers' compensation benefits in the form of medical treatment and requesting additional accommodations for her work place injury.

109. Plaintiff was terminated approximately two months after complaining of wrongful treatment due to her filing of a workers' compensation claim and after Defendant was court-ordered to reinstate Plaintiff's workers' compensation benefits related to her workplace injury.

110. Based on information and belief, Plaintiff was terminated as a result of exercising and requesting the benefits to which she was entitled under the Kansas Workers' Compensation Laws.

111. Defendant violated the law and public policy by retaliating against and discharging Plaintiff from his employment because Plaintiff exercised her rights under the Kansas Workers' Compensation statute as set forth in KSA §44-501 *et seq*.

112. As a direct and proximate cause of the alleged wrongful discharge, Plaintiff has incurred and will continue to incur lost income that she would have otherwise earned and is entitled to compensatory damages.

113. As a direct and proximate cause of the alleged wrongful discharge Plaintiff has incurred and will continue to incur emotional distress.

114. The actions and conduct set forth herein was outrageous and showed evil motive, reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant to punish Defendant and deter them and others from similar conduct.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count III of her Complaint, for a finding that she has been subjected to wrongful termination in violation of Kansas public policy, for an award of compensatory and punitive damages, pre-judgment and post-judgment interest, as provided by law, for her costs expended, for reasonable attorneys' fees and for such further legal and equitable relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby requests a jury trial on all triable issues.

*Respectfully submitted,*

**HOLMAN SCHIAVONE, LLC**

By: */s/Anne Schiavone*
    Anne Schiavone, KS #19669
    Jessica M. McDowell, D. Kan. #78731
    4600 Madison Avenue, Suite 810
    Kansas City, Missouri 64112
    Telephone: 816.283.8738
    Facsimile: 816.283.8739
    aschiavone@hslawllc.com
    jmcdowell@hslawllc.com

    ATTORNEYS FOR PLAINTIFF